JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Shannon Cropper and Kerrilyn Cropper, h/w

### DEFENDANTS

Stanley Black & Decker, Inc. d/b/a Stanley Security Solutions, Inc., Best Access Systems, Best, Stanley and Stanely Commerical Hardware

**(b)** County of Residence of First Listed Plaintiff   Montgomery County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Hartford County, CT
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Leonard G. Villiari, Esquire/Thomas A. Lynam, III, Esquire
Villari, Lentz & Lynam, LLC
100 North 20th Street, Suite 302
Philadelphia, PA 19103   P: 215-568-1990

Attorneys *(If Known)*
Michael R. Harding, Esquire
Kathleen H. Warren, Esquire
Robert K. Paglione, Esquire

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [ ] 2   U.S. Government Defendant
- [ ] 3   Federal Question *(U.S. Government Not a Party)*
- [x] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [x] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### PRISONER PETITIONS

**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### INTELLECTUAL PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sections 1332 and 1367

Brief description of cause:
Personal Injuries under theories of strict liability and negligence

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
March 4, 2022

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____

Address of Defendant: _____

Place of Accident, Incident or Transaction: _____

---

***RELATED CASE, IF ANY:***

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year        Yes ☐        No ☐
   previously terminated action in this court?

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit        Yes ☐        No ☐
   pending or within one year previously terminated action in this court?

3. Does this case involve the validity or infringement of a patent already in suit or any earlier        Yes ☐        No ☐
   numbered case pending or within one year previously terminated action of this court?

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights        Yes ☐        No ☐
   case filed by the same individual?

I certify that, to my knowledge, the within case ☐ is / ☐ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____    _____    _____
                                          *Attorney-at-Law / Pro Se Plaintiff*                  *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

| *A.* | *Federal Question Cases:* | | *B.* | *Diversity Jurisdiction Cases:* |
|---|---|---|---|---|
| ☐ 1. | Indemnity Contract, Marine Contract, and All Other Contracts | | ☐ 1. | Insurance Contract and Other Contracts |
| ☐ 2. | FELA | | ☐ 2. | Airplane Personal Injury |
| ☐ 3. | Jones Act-Personal Injury | | ☐ 3. | Assault, Defamation |
| ☐ 4. | Antitrust | | ☐ 4. | Marine Personal Injury |
| ☐ 5. | Patent | | ☐ 5. | Motor Vehicle Personal Injury |
| ☐ 6. | Labor-Management Relations | | ☐ 6. | Other Personal Injury *(Please specify):* _____ |
| ☐ 7. | Civil Rights | | ☐ 7. | Products Liability |
| ☐ 8. | Habeas Corpus | | ☐ 8. | Products Liability – Asbestos |
| ☐ 9. | Securities Act(s) Cases | | ☐ 9. | All other Diversity Cases |
| ☐ 10. | Social Security Review Cases | | | *(Please specify):* _____ |
| ☐ 11. | All other Federal Question Cases | | | |
| | *(Please specify):* _____ | | | |

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐    Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case
     exceed the sum of $150,000.00 exclusive of interest and costs:

☐    Relief other than monetary damages is sought.

DATE: _____    _____    _____
                                          *Attorney-at-Law / Pro Se Plaintiff*                  *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

APPENDIX I

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Shannon Cropper and Kerrilynn Cropper, h/w | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Stanley Black & Decker, Inc., et al. | : | |
| | : | NO.  21-CV-2201 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)  Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                    ( )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits                          ( )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d)  Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                    ( )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                       ( )

(f)  Standard Management – Cases that do not fall into any one of the other tracks.            (X)


| | | |
|---|---|---|
| March 4, 2022 | [signature] | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-568-1990 | 215-568-9920 | lgvillari@aol.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANNON M. CROPPER and | : | |
| KERRILYNN CROPPER, h/w | : | |
| 358 Fillmore Street | : | |
| Jenkintown, PA 19046, | : | NO. 21-CV-2201 |
| | : | |
| Plaintiffs | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| STANLEY BLACK & DECKER, INC. d/b/a | : | |
| STANLEY SECURITY SOLUTIONS, INC., | : | |
| BEST ACCESS SYSTEMS, BEST, STANLEY, | : | |
| STANLEY COMMERCIAL HARDWARE and | : | |
| STANLEY SECURITY SOLUTIONS | : | |
| TAIWAN, LTD. | : | |
| 1000 Stanley Drive | : | |
| New Britain, CT 06053 | : | |
| and | : | |
| STANLEY SECURITY SOLUTIONS, INC. | : | |
| d/b/a BEST ACCESS SYSTEMS, BEST, | : | |
| STANLEY, and STANLEY COMMERCIAL | : | |
| HARDWARE | : | |
| 8350 Sunlight Drive | : | |
| Fishers, IN 46037 | : | |
| and | : | |
| BEST ACCESS SYSTEMS d/b/a BEST, | : | |
| STANLEY, and STANLEY COMMERCIAL | : | |
| HARDWARE | : | |
| 6161 East 75th Street | : | |
| Indianapolis, IN 46250 | : | |
| and | : | |
| DORMAKABA USA, INC. d/b/a BEST | : | |
| ACCESS SOLUTIONS, INC., BEST, | : | |
| STANLEY, and STANLEY COMMERCIAL | : | |
| HARDWARE | : | |
| 6161 East 75th Street | : | |
| Indianapolis, IN 46250 | : | |
| and | : | |
| BEST ACCESS SOLUTIONS, INC. d/b/a | : | |
| BEST, STANLEY, and STANLEY | : | |
| COMMERCIAL HARDWARE | : | |
| 6161 East 75th Street | : | |
| Indianapolis, IN 46250 | : | |
| and | : | |

FU HSING AMERICAS INC. d/b/a BEST,       :
STANLEY, and STANLEY COMMERCIAL          :
HARDWARE                                 :
1424 Buford Business Blvd, #100          :
Buford, GA 30518                         :
         and                             :
TAIWAN FU HSING INDUSTRIAL CO., LTD.     :
d/b/a BEST, STANLEY, and STANLEY         :
COMMERCIAL HARDWARE                      :
1424 Buford Business Blvd, #100,         :
Buford, GA 30518                         :
         and                             :
UNIFIED DOOR AND HARDWARE                :
GROUP, LLC                               :
1650 Suckle Highway                      :
Pennsauken, NJ 08110                     :
         and                             :
TRU-FIT FRAME & DOOR CORP.               :
1650 Suckle Highway                      :
Pennsauken, NJ 08110                     :
         and                             :
STANLEY SECURITY SOLUTIONS               :
TAIWAN, LTD. D/B/A STANLEY BLACK &       :
DECKER, INC.                             :
100 Stanley Drive                        :
New Britain, CT 06053                    :
         and                             :
JOHN DOES 1- 5,                          :
                                         :
                        Defendants.      :

## PLANTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs, Shannon M. Cropper and Kerrilynn Cropper, husband and wife, by and

through their undersigned attorneys, Villari, Lentz & Lynam, LLC, say by way of Complaint

against Defendants, as follows:

## PARTIES

1.      Plaintiffs, Shannon M. Cropper ("Mr. Cropper") and Kerrilynn Cropper ("Mrs.

Cropper") (collectively, "Plaintiffs") are adult individuals, husband and wife, residing at 358

Fillmore Street, Jenkintown, PA 19046.

2.      Defendant, Stanley Black & Decker, Inc. d/b/a Stanley Security Solutions, Inc., Best Access Systems, BEST, STANLEY, Stanley Commercial Hardware ("SBD") and Stanley Security Solutions Taiwan, Ltd., is a foreign corporation that is registered to do business in Pennsylvania under entity number 625427, with a principal place of business located at 1000 Stanley Drive, New Britain, CT 06053.

3.      At all times material hereto, Defendant SBD conducted a regular course of business dealings in and throughout the Commonwealth of Pennsylvania.

4.      At all times material hereto, Defendant SBD acted by and through its duly authorized agents, ostensible agents, work persons, servants and employees, all of whom were working in furtherance of Defendant's business interests.

5.      Defendant SBD, as principal, is vicariously liable, at all times material hereto, for the acts and omissions of its agents, ostensible agents, servants, work persons and employees, including Co-Defendants herein.

6.      Defendant, Stanley Security Solutions, Inc. d/b/a Best Access Systems, BEST, STANLEY, and Stanley Commercial Hardware ("SSS") is a foreign corporation that is registered to do business in Pennsylvania under entity number 2806755, with a principal place of business located at 8350 Sunlight Drive, Fishers, IN 46037.

7.      At all times material hereto, Defendant SSS was a wholly-owned subsidiary of Defendant SBD.

8.      At all times material hereto, Defendant SSS conducted a regular course of business dealings in and throughout the Commonwealth of Pennsylvania.

9.      At all times material hereto, Defendant SSS acted by and through its duly authorized agents, ostensible agents, work persons, servants and employees, all of whom were working in furtherance of Defendant's business interests.

10.      Defendant SSS, as principal, is vicariously liable, at all times material hereto, for the acts and omissions of its agents, ostensible agents, servants, work persons and employees, including Co-Defendants herein.

11.      Defendant, Best Access Systems d/b/a BEST, STANLEY, and Stanley Commercial Hardware ("Best Access Systems"), is a foreign corporation that is registered to do business in Pennsylvania under entity number 2794205, with a principal place of business located at 6161 East 75th Street, Indianapolis, IN 46250.

12.      At all times material hereto, Defendant Best Access Systems was a wholly owned subsidiary of Defendant SSS.

13.      At all times material hereto, Defendant Best Access Systems conducted a regular course of business dealings in and throughout the Commonwealth of Pennsylvania.

14.      At all times material hereto, Defendant Best Access Systems acted by and through its duly authorized agents, ostensible agents, work persons, servants and employees, all of whom were working in furtherance of Defendant's business interests.

15.      Defendant Best Access Systems, as principal, is vicariously liable, at all times material hereto, for the acts and omissions of its agents, ostensible agents, servants, work persons and employees, including Co-Defendants herein.

16.      Defendant, dormakaba USA, Inc. d/b/a Best Access Solutions, Inc., BEST, STANLEY, and Stanley Commercial Hardware ("Dorma"), is a foreign corporation that is

registered to do business in Pennsylvania under entity number 4147227, with a principal place of business located at 6161 East 75th Street, Indianapolis, IN 46250.

17.     At all times material hereto, Defendant Dorma conducted a regular course of business dealings in and throughout the Commonwealth of Pennsylvania.

18.     At all times material hereto, Defendant Dorma acted by and through its duly authorized agents, ostensible agents, work persons, servants and employees, all of whom were working in furtherance of Defendant's business interests.

19.     Defendant Dorma, as principal, is vicariously liable, at all times material hereto, for the acts and omissions of its agents, ostensible agents, servants, work persons and employees, including Co-Defendants herein.

20.     Defendant, Best Access Solutions, Inc. d/b/a BEST, STANLEY, and Stanley Commercial Hardware ("Best Access Solutions"), is a foreign corporation that is registered to do business in Pennsylvania under entity number 6538956, with a principal place of business located at 6161 East 75th Street, Indianapolis, IN 46250.

21.     At all times material hereto, Defendant Best Access Solutions was a wholly-owned subsidiary of Defendant Dorma.

22.     At all times material hereto, Defendant Best Access Solutions conducted a regular course of business dealings in and throughout the Commonwealth of Pennsylvania.

23.     At all times material hereto, Defendant Best Access Solutions acted by and through its duly authorized agents, ostensible agents, work persons, servants and employees, all of whom were working in furtherance of Defendant's business interests.

24.     Defendant Best Access Solutions, as principal, is vicariously liable, at all times material hereto, for the acts and omissions of its agents, ostensible agents, servants, work persons and employees, including Co-Defendants herein.

25.     In December 2016, Defendant Dorma entered into an agreement to take over Defendants SBD/SSS's "mechanical security devices business - including Best Access Systems".[1]

26.     The deal was completed on February 23, 2017 for $725 Million in cash.[2]

27.     As part of the deal, Defendant Dorma "acquire[d] STANLEY Security's mechanical division to form BEST Access Solutions".[3]

28.     According to Defendant Dorma, the deal enabled "dormakaba to become [a] top three player in the North American market, the most profitable market in the industry", with "***BEST* as one of the most recognized brands in the market**".[4] (emphasis in original).

29.     While restyling the business name to "Best Access Solutions", Defendant Dorma merely continued the business of SSS/ Best Access Systems, including the production of Best locks, under the widely-recognized "BEST" brand, of which Defendant Dorma continues to proudly assert its ownership and control:

---

[1] https://www.securityinfowatch.com/access-identity/access-control/locks/article/12289592/stanley-black-decker-sells-off-mechanical-security-businesses-to-dormakaba (accessed on April 29, 2021).

[2] https://www.prnewswire.com/news-releases/stanley-black--decker-completes-sale-of-majority-of-its-mechanical-security-businesses-to-dormakaba-300412165.html (accessed on April 29, 2021).

[3] "The BEST Timeline" https://www.bestaccess.com/about-best/ (accessed on April 29, 2021)

[4] https://www.dormakaba.com/resource/blob/24362/e67916e1b943569214f0e585dd5d44f5/21-12-16-sbd-presentation-en-data.pdf (accessed on April 29, 2021)



https://www.bestaccess.com/products/ (accessed on April 29, 2021).





https://www.stanleyhardwarefordoors.com/products/commercial-hardware/ (accessed on April 29, 2021).

30.     Additionally, Defendant Dorma continues to maintain BEST's longtime headquarters -- 6161 East 75th Street, Indianapolis, IN 46250 USA -- as its own.[5]

31.     Defendant Dorma also continues to maintain the BEST trademark: "BEST and SHELTER are some of the trademarks of dormakaba USA Inc. © 2021 All rights reserved." [6]

32.     In sum, Defendant Dorma's late 2016/early 2017 business deal with Defendants SBD/SSS effected a *de facto* merger and/or mere continuation of the Best Access/ BEST mechanical lock business.

---

[5]   **CONTACT**
      dormakaba Americas Headquarters
      6161 East 75th Street
      Indianapolis, IN 46250 USA
      Phone 855-365-2407
https://www.bestaccess.com/ (accessed on April 29, 2021).

[6] https://www.bestaccess.com/ (accessed on April 29, 2021).

33.     Defendant, Fu Hsing Americas Inc. d/b/a BEST, STANLEY, and Stanley Commercial Hardware ("FHA"), is a foreign corporation with a principal place of business located at 1424 Buford Business Blvd, #100, Buford, Georgia 30518.

34.     At all times material hereto, Defendant FHA conducted a regular course of business dealings in and throughout the Commonwealth of Pennsylvania.

35.     At all times material hereto, Defendant FHA acted by and through its duly authorized agents, ostensible agents, work persons, servants and employees, all of whom were working in furtherance of Defendant's business interests.

36.     Defendant FHA, as principal, is vicariously liable, at all times material hereto, for the acts and omissions of its agents, ostensible agents, servants, work persons and employees, including Co-Defendants herein.

37.     Defendant, Taiwan Fu Hsing Industrial Co., Ltd. d/b/a BEST, STANLEY, and Stanley Commercial Hardware ("TFHI"), is a foreign corporation with a principal place of business located at 1424 Buford Business Blvd, #100, Buford, Georgia 30518.

38.     At all times material hereto, Defendant TFHI conducted a regular course of business dealings in and throughout the Commonwealth of Pennsylvania.

39.     At all times material hereto, Defendant TFHI acted by and through its duly authorized agents, ostensible agents, work persons, servants and employees, all of whom were working in furtherance of Defendant's business interests.

40.     Defendant TFHI, as principal, is vicariously liable, at all times material hereto, for the acts and omissions of its agents, ostensible agents, servants, work persons and employees, including Co-Defendants herein.

41.     Defendant, Unified Door and Hardware Group, LLC ("UDHG") is a foreign corporation that is registered to do business in Pennsylvania under entity number 4236553, with a principal place of business located at 1650 Suckle Highway, Pennsauken, New Jersey 08110.

42.     At all times material hereto, Defendant UDHG conducted a regular course of business dealings in and throughout the Commonwealth of Pennsylvania.

43.     At all times material hereto, Defendant UDHG acted by and through its duly authorized agents, ostensible agents, work persons, servants and employees, all of whom were working in furtherance of Defendant's business interests.

44.     Defendant UDHG, as principal, is vicariously liable, at all times material hereto, for the acts and omissions of its agents, ostensible agents, servants, work persons and employees, including Co-Defendants herein.

45.     Defendant, Tru-Fit Frame & Door Corp. ("Tru-Fit") is a foreign corporation that is registered to do business in Pennsylvania under entity number 2744255 with a principal place of business located at 1650 Suckle Highway, Pennsauken, New Jersey 08110.

46.     At all times material hereto, Defendant Tru-Fit was a wholly-owned subsidiary of Defendant UDHG.

47.     At all times material hereto, Defendant Tru-Fit conducted a regular course of business dealings in and throughout the Commonwealth of Pennsylvania.

48.     At all times material hereto, Defendant Tru-Fit acted by and through its duly authorized agents, ostensible agents, work persons, servants and employees, all of whom were working in furtherance of Defendant's business interests.

49.     Defendant Tru-Fit, as principal, is vicariously liable, at all times material hereto, for the acts and omissions of its agents, ostensible agents, servants, work persons and employees, including Co-Defendants herein.

50.     Defendant Stanley Security Solutions Taiwan, Ltd. ("SSST") d/b/a Stanley Black & Decker, Inc., is a foreign corporation with a principal place of business located at 1000 Stanley Drive, New Britain, CT 06053.

51.     At all times material hereto, Defendant SSST conducted a regular course of business dealings in and throughout the Commonwealth of Pennsylvania.

52.     At all times material hereto, Defendant SSST acted by and through its duly authorized agents, ostensible agents, work persons, servants and employees, all of whom were working in furtherance of Defendant's business interests.

53.     Defendant SSST, as principal, is vicariously liable, at all times hereto, for the acts and omissions of its agents, ostensible agents, servants, work persons and employees, including Co-Defendants herein.

54.     Defendant John Does 1-5, are those persons/entities who are responsible for designing, manufacturing, and/or selling/distributing the product at issue, whose identities could not be ascertained despite reasonable diligence in advance of discovery.

## JURISDICTION AND VENUE

55.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states as set forth above and the value of the claims exceeds $150,000.00.

56.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in the Eastern District of Pennsylvania.

## THE PRODUCT

57.     At all times material hereto, Defendants SBD, SSS, Best Access Systems, Dorma, Best Access Solutions, FHA, TFHI, UDHG, Tru-Fit, SSST and John Does 1-5, designed, manufactured, distributed and/or sold a line of BEST/ STANLEY/ Stanley Commercial Hardware locksets, including the particular cylindrical locksets at issue -- the BEST 5K Series Lockset with "deadlatch" components (hereinafter "the Product").

58.     The Product was sold under various brands or private labels, including but not limited to BEST, STANLEY and Dorma.

59.     Unlike "deadlock" and "deadbolt" locks -- which require a key to the lock the door from the outside -- a "deadlatch" lock contains a spring-bolt latch which "deadlocks" upon end pressure (*i.e.*, it locks when the latch surpasses the "strike plate" and enters the "box").

60.     As such, a deadlatch automatically locks from the outside when the door is closed.

61.     From the inside, a deadlatch can be (or at least is meant to be) retracted or unlocked simply by turning the knob.

62.     When a deadlatch's spring-bolt components fail, however, the lock may not be able to be unlocked from the inside, posing entrapment risks.

63.     Such a failure could lead to the inability to vacate a premises in an emergency.

64.     Even though Defendants' Product was intended for "heavy duty" commercial use -- it was designed to include **plastic deadlatch components**.

65.     Defendants' design and use of plastic deadlatch components for the Product resulted in numerous reports of latch failure, leading to the recall of 70,000 such locks (Recall Number 17-038) issued by the United States Consumer Product Safety Commission ("CPSC").

## THE DEADLATCH FAILURE INCIDENT

66.     On August 19, 2019, Mr. Cropper was on duty for his regular work shift as a locksmith for Temple University, when he received a work order for "entrapment in a bathroom" at 1304 Morgan Hall North, 1601 N. Broad St, Philadelphia, PA 19122 -- an on-campus residential building that first opened in August 2013.

67.     Upon arrival at the above location, Mr. Cropper encountered Defendants' Product, more specifically a "Best 5K (L/C) 0 L 14 C FL 626" which was locked and disabled from the outside as well as the inside.

68.     Because this particular lockset was for a bathroom, as opposed to the front door of a residence, its outer cylinder did not contain a keyhole; rather, the cylinder contained a half-inch slot for manual retraction of the latch via a flathead screwdriver, coin or similar device.

69.     Unfortunately, when the Product's plastic components fail, the slot for manual retraction *also* is inoperable, resulting in entrapment and disablement from *both sides*.

70.     As a result, when the Product is jammed on both sides, the only way to release the deadlatch is by using a channel lock pliers or similar instrument to pry down on the door handle and then back up in a forceful motion to snap the spindle and free the lock.

71.     Prior to the incident at issue, Mr. Cropper had responded to numerous other "entrapment" calls regarding Defendants' Product, and on each occasion the lock was jammed on both sides, requiring the use of force to free the lock.

72.     On the date of the incident, Mr. Cropper encountered the Product at issue, which was jammed on both sides.

73.     Accordingly, he used a channel lock pliers to pry down the door handle and then back up in a forceful motion to snap the spindle and free the lock.

74.     While freeing the lock, Mr. Cropper felt a painful burning sensation throughout his right upper extremity, including his forearm, biceps and fingers.

75.     He immediately called his co-worker, Tony Merola, and his supervisor, Brandon Chandler, to report the incident, both of whom arrived at the scene a few moments later and helped him obtain medical treatment.

76.     Mr. Cropper was emergently transported via police car to Temple University Hospital, where he was assessed with, *inter alia*, a **distal biceps tendon rupture of the right arm**, including **complete tearing of the distal biceps tendon** at the radial tuberosity attachment site **and partial tearing of the common extensor tendon** at the lateral epicondyle attachment site.

77.     Sadly, despite numerous surgical procedures and treatments in the 20 months since the incident, Mr. Cropper still has not regained complete use of his dominant right hand/ arm.

78.     The aforesaid incident was due solely to the dangerous condition created by the defective Product and the negligence and carelessness of Defendants, and was due in no manner whatsoever to any act or failure to act on the part of the Plaintiffs.

**COUNT I – STRICT LIABILITY**
**PLAINTIFFS v. DEFENDANTS SBD, SSS, BEST ACCESS SYSTEMS, DORMA, BEST**
**ACCESS SOLUTIONS, FHA, TFHI, SSST and JOHN DOES 1-5**

79.     Plaintiffs hereby incorporate the averments set forth in paragraphs 1-74, *supra*, as though fully set forth at length.

80.     Defendants are strictly liable in tort to Plaintiff pursuant to § 402(A) of the Restatement (Second) of Torts, as adopted by the Courts of this Commonwealth as a designer, manufacturer and seller of the defective Product.

81.     The Product that injured Mr. Cropper was defective and dangerous.

82.     The Product that injured Mr. Cropper reached its users without substantial change from the condition it was in when it left the control of Defendants and/or was updated by the manufacturer.

83.     The Product that injured Mr. Cropper left the control of Defendants while lacking elements necessary to make it safe for its intended use.

84.     As of the date of Mr. Cropper's injuries, there were numerous technically and economically feasible alternative designs available to the Defendants to make the Product safe for its intended use.

85.     The Product that injured Mr. Cropper was defective in that it:

    a.     Contained a dysfunctional latch that can fail and prevent retraction of the lock from the inside, posing an entrapment risk;

    b.     Included plastic deadlatch components;

    c.     Contained plastic deadlatch components, which are knowingly more susceptible to failure than traditional steel/ durable metal components;

    d.     Included plastic deadlatch components notwithstanding the Product's intended use for "heavy duty", commercial use;

e.  Failed to contain an alternate means to retract the latch in the event of plastic component failure;

f.  Required users to exert violent physical force to free the lock upon failure of its plastic components;

g.  Lacked a proper warning to make users aware of the risk of entrapment posed by the lock's plastic components;

h.  Lacked a proper warning to make users aware of the risk of injury posed by failure of the lock's plastic components;

i.  Failed to contain all elements necessary to make the Product safe for its intended use; and

j.  Violated the applicable industry regulations and standards regarding the composition and safety of commercial locksets and doors.

86.  The danger presented by the Product is unknowable and unacceptable to the average or ordinary consumer.

87.  Additionally, a reasonable person would conclude that the probability and seriousness of harm caused by the Product outweigh the burden or costs of taking precautions.

88.  Pursuant to Tincher v. Omega Flex, Inc., 104 A.3d 328 (Pa. 2014), Plaintiffs aver that the Product is defective under the **"consumer expectations test"**.

89.  Pursuant to Tincher v. Omega Flex, Inc., 104 A.3d 328 (Pa. 2014), Plaintiffs aver that the Product is defective under the **"risk-utility test"**.

90.  As a direct and proximate result of the above-described incident, Mr. Cropper has suffered injuries which are serious and permanent in nature, including but not limited to: distal biceps tendon rupture of the right arm, including complete tearing of the distal biceps tendon at the radial tuberosity attachment site and partial tearing of the common extensor tendon at the lateral epicondyle attachment site; muscle destruction; extraordinary weakness and illness; incapacity; immobility; profound emotional distress; severe physical pain; permanent scarring

and disfigurement; decreased range of motion; increased risk of harm; numbness; tingling; tenderness; fatigue; severe mental anguish and anxiety; inability to fall asleep; interrupted sleep; aggravation and/or exacerbation of all known and unknown pre-existing medical conditions; and a severe shock to his entire nervous system and other injuries, the full extent of which is not yet known.

91.     As a direct and proximate result of the above-described incident, Mr. Cropper has been, and may in the future be, required to undergo significant medical care, evaluation, therapy, treatment, costly medications and invasive and painful medical procedures and surgeries in an effort to cure his injuries.

92.     As a direct and proximate result of the above-described incident, Mr. Cropper has suffered, and may in the future suffer, an inability to perform his usual and daily duties, labors, occupations and avocations.

93.     As a direct and proximate result of the above-described incident, Mr. Cropper has been, and may in the future be, required to expend various and diverse sums of money in an effort to cure his injuries.

94.     As a direct and proximate result of the above-described incident, Mr. Cropper has suffered, and may in the future suffer, a loss of leisure time and a loss of life's pleasures.

95.     As a direct and proximate result of the above-described incident, Mr. Cropper has suffered, and may in the future suffer, a loss of earnings and future earning capacity.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants in an amount in excess of One Hundred Fifty-Thousand Dollars ($150,000.00), together with delay damages, interest, costs, and such other just and equitable relief as this Court deems proper.

## COUNT II – STRICT LIABILITY
## PLAINTIFFS v. DEFENDANTS UDHG, TRU-FIT, FHA, TFHI and JOHN DOES 1-5

96.     Plaintiffs hereby incorporate the averments set forth in paragraphs 1-91, *supra*, as though fully set forth at length.

97.     Defendants are strictly liable in tort to Plaintiff pursuant to § 402(A) of the Restatement (Second) of Torts, as adopted by the Courts of this Commonwealth as a seller and distributor of the defective Product.

98.     The Product that injured Mr. Cropper was defective and dangerous.

99.     The Product that injured Mr. Cropper reached its users without substantial change from the condition it was in when it left the control of Defendants and/or was updated by the manufacturer.

100.    The Product that injured Mr. Cropper left the control of Defendants while lacking elements necessary to make it safe for its intended use.

101.    As of the date of Mr. Cropper's injuries, there were numerous technically and economically feasible alternative designs available to the Defendants to make the Product safe for its intended use.

102.    The Product that injured Mr. Cropper was defective in that it:

    a.     Contained a dysfunctional latch that can fail and prevent retraction of the lock from the inside, posing an entrapment risk;

    b.     Included plastic deadlatch components;

    c.     Contained plastic deadlatch components, which are knowingly more susceptible to failure than traditional steel/ durable metal components;

    d.     Included plastic deadlatch components notwithstanding the Product's intended use for "heavy duty", commercial use;

    e.     Failed to contain an alternate means to retract the latch in the event of plastic component failure;

  f.  Required users to exert violent physical force to free the lock upon failure of its plastic components;

  g.  Lacked a proper warning to make users aware of the risk of entrapment posed by the lock's plastic components;

  h.  Lacked a proper warning to make users aware of the risk of injury posed by failure of the lock's plastic components;

  i.  Failed to contain all elements necessary to make the Product safe for its intended use; and

  j.  Violated the applicable industry regulations and standards regarding the composition and safety of commercial locksets and doors.

103. The danger presented by the Product is unknowable and unacceptable to the average or ordinary consumer.

104. Additionally, a reasonable person would conclude that the probability and seriousness of harm caused by the Product outweigh the burden or costs of taking precautions.

105. Pursuant to <u>Tincher v. Omega Flex, Inc.</u>, 104 A.3d 328 (Pa. 2014), Plaintiffs aver that the Product is defective under the **"consumer expectations test"**.

106. Pursuant to <u>Tincher v. Omega Flex, Inc.</u>, 104 A.3d 328 (Pa. 2014), Plaintiffs aver that the Product is defective under the **"risk-utility test"**.

107. As a direct and proximate result of the above-described incident, Mr. Cropper has suffered injuries which are serious and permanent in nature, including but not limited to: distal biceps tendon rupture of the right arm, including complete tearing of the distal biceps tendon at the radial tuberosity attachment site and partial tearing of the common extensor tendon at the lateral epicondyle attachment site; muscle destruction; extraordinary weakness and illness; incapacity; immobility; profound emotional distress; severe physical pain; permanent scarring and disfigurement; decreased range of motion; increased risk of harm; numbness; tingling; tenderness; fatigue; severe mental anguish and anxiety; inability to fall asleep; interrupted sleep;

aggravation and/or exacerbation of all known and unknown pre-existing medical conditions; and a severe shock to his entire nervous system and other injuries, the full extent of which is not yet known.

108.    As a direct and proximate result of the above-described incident, Mr. Cropper has been, and may in the future be, required to undergo significant medical care, evaluation, therapy, treatment, costly medications and invasive and painful medical procedures and surgeries in an effort to cure his injuries.

109.    As a direct and proximate result of the above-described incident, Mr. Cropper has suffered, and may in the future suffer, an inability to perform his usual and daily duties, labors, occupations and avocations.

110.    As a direct and proximate result of the above-described incident, Mr. Cropper has been, and may in the future be, required to expend various and diverse sums of money in an effort to cure his injuries.

111.    As a direct and proximate result of the above-described incident, Mr. Cropper has suffered, and may in the future suffer, a loss of leisure time and a loss of life's pleasures.

112.    As a direct and proximate result of the above-described incident, Mr. Cropper has suffered, and may in the future suffer, a loss of earnings and future earning capacity.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants in an amount in excess of One Hundred Fifty-Thousand Dollars ($150,000.00), together with delay damages, interest, costs, and such other just and equitable relief as this Court deems proper.

## COUNT III - NEGLIGENCE
## PLAINTIFFS v. DEFENDANTS SBD, SSS, BEST ACCESS SYSTEMS, DORMA, BEST ACCESS SOLUTIONS, FHA, TFHI, SSST and JOHN DOES 1-5

113.    Plaintiffs hereby incorporate the averments set forth in paragraphs 1-108, *supra*, as though fully set forth at length.

114.    The incident at issue was caused by the negligent and careless conduct of the Defendants, acting by and through their employees, agents, ostensible agents, servants and work persons, and consisted, *inter alia*, of the following:

a.      Designing and implementing the Product with a dysfunctional latch that can fail and prevent retraction of the lock from the inside, posing an entrapment risk;

b.      Designing and implementing the Product with plastic deadlatch components;

c.      Designing and implementing the Product with plastic deadlatch components, which are knowingly more susceptible to failure than traditional steel/ durable metal components;

d.      Designing and implementing the Product with plastic deadlatch components, notwithstanding the Product's intended use for "heavy duty" commercial use;

e.      Designing and implementing the Product without an alternate means to retract the latch in the event of plastic component failure;

f.      Designing and implementing the Product that required users to exert violent physical force to free the lock upon failure of its plastic components;

g.      Failing to warn users of the risk of entrapment posed by the lock's plastic components;

h.      Failing to warn users of the risk of injury posed by failure of the lock's plastic components;

i.      Designing and implementing a commercial lockset that is unreasonably dangerous; and

j.      Violating the applicable industry regulations and standards regarding the composition and safety of commercial locksets and doors.

115.     As a direct and proximate result of the above-described incident, Mr. Cropper has suffered injuries which are serious and permanent in nature, including but not limited to: distal biceps tendon rupture of the right arm, including complete tearing of the distal biceps tendon at the radial tuberosity attachment site and partial tearing of the common extensor tendon at the lateral epicondyle attachment site; muscle destruction; extraordinary weakness and illness; incapacity; immobility; profound emotional distress; severe physical pain; permanent scarring and disfigurement; decreased range of motion; increased risk of harm; numbness; tingling; tenderness; fatigue; severe mental anguish and anxiety; inability to fall asleep; interrupted sleep; aggravation and/or exacerbation of all known and unknown pre-existing medical conditions; and a severe shock to his entire nervous system and other injuries, the full extent of which is not yet known.

116.     As a direct and proximate result of the above-described incident, Mr. Cropper has been, and may in the future be, required to undergo significant medical care, evaluation, therapy, treatment, costly medications and invasive and painful medical procedures and surgeries in an effort to cure his injuries.

117.     As a direct and proximate result of the above-described incident, Mr. Cropper has suffered, and may in the future suffer, an inability to perform his usual and daily duties, labors, occupations and avocations.

118.     As a direct and proximate result of the above-described incident, Mr. Cropper has been, and may in the future be, required to expend various and diverse sums of money in an effort to cure his injuries.

119.     As a direct and proximate result of the above-described incident, Mr. Cropper has suffered, and may in the future suffer, a loss of leisure time and a loss of life's pleasures.

120.    As a direct and proximate result of the above-described incident, Mr. Cropper has

suffered, and may in the future suffer, a loss of earnings and future earning capacity.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants in an

amount in excess of One Hundred Fifty-Thousand Dollars ($150,000.00), together with delay

damages, interest, costs, and such other just and equitable relief as this Court deems proper.

**COUNT IV - NEGLIGENCE**
**PLAINTIFFS v. DEFENDANTS UDHG, TRU-FIT, FHA, TFHI and JOHN DOES 1-5**

121.    Plaintiffs hereby incorporate the averments set forth in paragraphs 1-116, *supra*,

as though fully set forth at length.

122.    The incident at issue was caused by the negligent and careless conduct of the

Defendants, acting by and through their employees, agents, ostensible agents, servants and work

persons, and consisted, *inter alia*, of the following:

  a.    Selling/distributing the Product with a dysfunctional latch that can fail and
        prevent retraction of the lock from the inside, posing an entrapment risk;

  b.    Selling/distributing the Product with plastic deadlatch components;

  c.    Selling/distributing the Product with plastic deadlatch components, which
        are knowingly more susceptible to failure than traditional steel/ durable
        metal components;

  d.    Selling/distributing the Product with plastic deadlatch components,
        notwithstanding the Product's intended use for "heavy duty" commercial
        use;

  e.    Selling/distributing the Product without an alternate means to retract the
        latch in the event of plastic component failure;

  f.    Selling/distributing the Product that required users to exert violent
        physical force to free the lock upon failure of its plastic components;

  g.    Failing to warn users of the risk of entrapment posed by the lock's plastic
        components;

h. Failing to warn users of the risk of injury posed by failure of the lock's plastic components;

i. Selling/distributing a commercial lockset that is unreasonably dangerous; and

j. Selling/distributing a commercial lockset that violates the applicable industry regulations and standards regarding the composition and safety of commercial locksets and doors.

123. As a direct and proximate result of the above-described incident, Mr. Cropper has suffered injuries which are serious and permanent in nature, including but not limited to: distal biceps tendon rupture of the right arm, including complete tearing of the distal biceps tendon at the radial tuberosity attachment site and partial tearing of the common extensor tendon at the lateral epicondyle attachment site; muscle destruction; extraordinary weakness and illness; incapacity; immobility; profound emotional distress; severe physical pain; permanent scarring and disfigurement; decreased range of motion; increased risk of harm; numbness; tingling; tenderness; fatigue; severe mental anguish and anxiety; inability to fall asleep; interrupted sleep; aggravation and/or exacerbation of all known and unknown pre-existing medical conditions; and a severe shock to his entire nervous system and other injuries, the full extent of which is not yet known.

124. As a direct and proximate result of the above-described incident, Mr. Cropper has been, and may in the future be, required to undergo significant medical care, evaluation, therapy, treatment, costly medications and invasive and painful medical procedures and surgeries in an effort to cure his injuries.

125. As a direct and proximate result of the above-described incident, Mr. Cropper has suffered, and may in the future suffer, an inability to perform his usual and daily duties, labors, occupations and avocations.

126.    As a direct and proximate result of the above-described incident, Mr. Cropper has been, and may in the future be, required to expend various and diverse sums of money in an effort to cure his injuries.

127.    As a direct and proximate result of the above-described incident, Mr. Cropper has suffered, and may in the future suffer, a loss of leisure time and a loss of life's pleasures.

128.    As a direct and proximate result of the above-described incident, Mr. Cropper has suffered, and may in the future suffer, a loss of earnings and future earning capacity.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants in an amount in excess of One Hundred Fifty-Thousand Dollars ($150,000.00), together with delay damages, interest, costs, and such other just and equitable relief as this Court deems proper.

## COUNT V
## PLAINTIFF KERRILYNN CROPPER v. ALL DEFENDANTS
## LOSS OF CONSORTIUM

129.    Plaintiff Mrs. Cropper hereby incorporates the averments set forth in paragraphs 1-124, *supra*, as though fully set forth at length.

130.    Plaintiff Mrs. Cropper has lost the usual support, society, comfort and economic support of her husband as a direct result of the negligence and carelessness of the Defendants, and has been and may continue to be deprived of the consortium, assistance, companionship, and useful services of her husband, has been required to provide special services and care for him, and has in the past, is presently, and will in the future be caused to expend sums of money for his medical treatment, all of which may continue for an indefinite time into the future and all of which has been to her financial detriment and loss.

WHEREFORE, Plaintiff Mrs. Cropper demands judgment in her favor and against Defendants in an amount in excess of One Hundred Fifty-Thousand Dollars ($150,000.00), together with delay damages, interest, costs, and such other just and equitable relief as this Court deems proper.

**VILLARI, LENTZ & LYNAM, LLC**

*/s/ Leonard G. Villari*

LEONARD G. VILLARI, ESQUIRE
THOMAS A. LYNAM, III, ESQUIRE
Attorney I.D. Nos: 68844/83817
100 N. 20th Street
Suite 302
Philadelphia, PA 19103
P: 215-568-1990
E-Mail: tlynam@vll-law.com / lgvillari@aol.com
*Attorneys for Plaintiffs*

Date: March 4, 2022

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHANNON M. CROPPER AND KERRILYNN CROPPER, H/W    : | |
|                             : | |
|           Plaintiffs,       : | JURY TRIAL DEMANDED |
|                             : | |
|      v.                      : | |
|                             : | NO.  21-CV-2201 |
| STANLEY BLACK & DECKER, INC. d/b/a STANLEY SECURITY SOLUTIONS, INC., BEST ACCESS SYSTEMS, BEST, STANLEY AND STANLEY COMMERCIAL HARDWARE, ET AL.,       : | |
|           Defendants.    : | |

## <u>CERTIFICATE OF SERVICE</u>

      I, Leonard G. Villari, Esquire, hereby certify that, on the date noted below, I am serving

within Second Amended Complaint upon all counsel of record *via* electronic filing.

                                   **VILLARI, LENTZ & LYNAM, LLC**

                                  */s/ Leonard G. Villari*
                                  LEONARD G. VILLARI, ESQUIRE
                                  THOMAS A. LYNAM, III, ESQUIRE
                                  Attorney I.D. Nos: 68844/83817
                                  100 N. 20th Street
                                  Suite 302
                                  Philadelphia, PA 19103
                                  P: 215-568-1990
                                  E-Mail: tlynam@vll-law.com / lgvillari@aol.com
                                  *Attorneys for Plaintiffs*

Date: March 4, 2022